FILED
2012 Oct-19  PM 02:33
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY ANN NELSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:12-cv-00015-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Mary Ann Nelson ("Nelson") brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I.  Procedural History

Nelson filed her application for Title II disability insurance benefits on July

12, 2007, alleging a disability onset date of June 29, 2007, due to diabetes, asthma, coronary artery disease, osteoarthritis, hypertension, renal insufficiency, otitis media and rhinitis, morbid obesity, narcolepsy, anemia, bursitis, carpal tunnel syndrome in both wrists, acid reflux, kerotoconus in both eyes, and stress disorder. (R. 148, 160).  After the SSA denied her application on September 25, 2007, Nelson requested a hearing on November 19, 2007. (R. 107-111, 114). At the time of the hearing on September 21, 2009, Nelson was 53 years old with bachelor's and master's degrees, and her past relevant work included working as a scheduler and high school English teacher.  (R. 31, 161, 168, 931). Nelson has not engaged in substantial gainful activity since July 12, 2007, the date of her application.  (R. 160).

The ALJ denied Nelson's claims on March 23, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on June 30, 2011, (R. 13-16, 27-51).  Nelson then filed this action on January 3, 2012, pursuant to 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

   Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by

substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review

of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, neither requires objective proof of the pain
> itself.  Thus under both the regulations and the first (objectively

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761
F.2d 1545, 1548 (11th Cir. 1985).

identifiable condition) and third (reasonably expected to cause pain
alleged) parts of the *Hand* standard a claimant who can show that his
condition could reasonably be expected to give rise to the pain he
alleges has established a claim of disability and is not required to
produce additional, objective proof of the pain itself. *See* 20 CFR §§
404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th
Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added). Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find a disability unless the ALJ properly discredits the claimant's

testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

It is established in this circuit that if the [ALJ] fails to articulate
reasons for refusing to credit a claimant's subjective pain testimony,
then the [ALJ], as a matter of law, has accepted that testimony as true.
Implicit in this rule is the requirement that such articulation of
reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. As such, if the ALJ either fails to articulate reasons for

refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony

of the plaintiff and render a finding of disability. *Id*.

# IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that
Nelson had disability insurance on her alleged onset of disability date but had not
engaged in substantial gainful activity since the date of her application, and
therefore met Step One.  (R. 46).  Next, the ALJ found that Nelson met Step Two
because she suffered from the severe impairments of "osteoarthritis, coronary
artery disease, hypertension, asthma, diabetes, sleep apnea, and obesity."  *Id.*  The
ALJ then proceeded to the next step and found that Nelson failed to satisfy Step
Three because her "impairments, when considered individually or in combination,
neither meet nor equal any impairment listed[.]"  (R. 46).  Although the ALJ
answered Step Three in the negative, consistent with the law, *see McDaniel*, 800
F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Nelson:

> retains the residual functional capacity to perform light work in a
> temperature controlled environment which allows for a sit or stand
> option, use of a cane for ambulation and balancing, no more than
> occasional bending, stooping, or overhead reaching, no operation of
> foot or leg controls, no climbing, no unrestricted heights, and no
> driving.

(R. 46).  Moreover, in light of the residual functional capacity ("RFC"), the ALJ
determined that Nelson is "capable of performing her past relevant work as a
teacher."  (R. 47).  Consequently, the ALJ found that Nelson "was not under a

'disability,' as defined in the Social Security Act, at any time through the date of this decision."  (R. 47).  *See also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

The court turns now to Nelson's contentions that the ALJ (1) failed to give the appropriate weight to the treating and consultative physicians' opinions and failed to apply the "treating physician rule" to treating physician, Calvin R. Shaffer, M.D.'s medical opinion, and (2) failed to give the vocational expert an appropriate hypothetical to include all of Nelson's impairments.  *See* doc. 7, at 2-14.  The court addresses each contention in turn.

A.  Alleged failure to apply the "treating physician rule" and to give appropriate weight to the consultative examiner's opinion

Nelson has a host of medical problems and, at the time of her application, was taking over 30 medications.  (R. 166-168, 541-2, 564-68).   In fact, Nelson's record has over 800 pages of medical evidence.  *See generally* (R. 1-957). However, to prove her claim, Nelson must do more than just outline her ailments; rather, the analysis hinges on whether these ailments rise to a disability.

*i. Dr. Shaffer's treatment notes and opinion evidence*

As her first contention, Nelson asserts that the ALJ erred by failing to give treating physician Dr. Shaffer's opinion controlling weight.  *See* doc. 7 at 5-11.

The specific opinion that Nelson refers to is a "Physical Capacities Evaluation," a one-page questionnaire Dr. Shaffer filled out on January 15, 2009, opining that Nelson could (1) sit, stand, or walk for zero minutes at any one time and that Nelson could sit, stand, and walk for one hour each during an entire 8-hour work day; (2) occasionally lift and carry up to 5 lbs, but never lift or carry over 6 lbs; (3) use her hands for simple grasping but not for pushing and pulling of arm controls or fine manipulation and could use her feet for repetitive movements such as pushing and pulling of leg controls; and (4) not bend, squat, crawl, climb, or reach and had mild restrictions driving automobile equipment, but no restrictions related to unprotected heights, being around moving machinery, exposure to marked changes in temperature or humidity or exposure to dust, fumes and gases. (R. 858). Nelson contends that this one page questionnaire establishes that she is disabled, and, as such, challenges the ALJ's decision to give little weight to the opinion. The court finds that the substantial evidence supports the ALJ's decision.

The ALJ gave little weight to Dr. Shaffer's opinion because the ALJ determined that "[Nelson's] impairments could create some limitations, but not to the degree alleged by Dr. Shaffer, which was unsupported by the great weight of the medical evidence of record and inconsistent with his own treatment records." (R. 45). Specifically, the ALJ found that "[Nelson] has not generally received the

type of medical treatment one would expect for a totally disabled individual," and that while in 2006, Dr. Theodis Buggs, an orthopedic specialist, "advised [Nelson] to increase her physical activity and referred her to physical therapy. . . there was no record of physical therapy in the medical evidence of record, other than [Nelson's] report to Dr. Thomas that she underwent some rehabilitation which helped her chronic knee pain." (R. 44). Moreover, the ALJ found significant that while Nelson complained of hip and knee pain to Dr. Shaffer, "no change was made to her medications other than the addition of anti-inflammatory medications" and "[n]o evidence of any recent treatment for knee, hip or back pain is present in the medical evidence of record [and] [w]hile [Nelson] testified her anginia, osteoarthritis, fibromyalgia, and heart ailments have worsened since she retired, no corresponding increase in treatment for said alleged ailments is present in the medical evidence of record." (R. 44).

Except for arguing that the ALJ should have given Dr. Shaffer's opinion controlling weight, Nelson never demonstrated how the rest of the medical evidence, including Dr. Shaffer's substantial treatment notes, supports Dr. Shaffer's opinion. Rather, Nelson makes a blanket assertion that the "treating physician rule" should apply to the facts of this case. Doc. 7 at 13. This court disagrees. "It is well-established that 'the testimony of a treating physician must

be given substantial or considerable weight *unless* "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Additionally, the "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

"Good cause" existed here because Dr. Shaffer's opinions were not supported by the evidence and were inconsistent with his own treatment records. For example, although Nelson furnished treatment notes from her regular visits to Dr. Shaffer from 2000 to 2008, *see e.g.* (R. 282, 895), the entries from June 2006 (the period that is a year before Nelson's alleged disability onset date) show only that Nelson had knee pain, (R. 510), and in Feb. and April 2007 (just a few months before her alleged onset date), that Nelson had "no bone, joint, or muscle pain" and a "normal station and gait." (R. 508, 309). Critically, starting in

approximately May 2007, every entry stated "Musculoskeletal: chronic osteoarthritis involving knees, hips, and back," regardless of whether Nelson's chief complaint was related to her osteoarthritis.  (R. 304, 833, 835-839). Moreover, Dr. Shaffer ordered no new treatment for Nelson's chronic osteoarthritis, except to send Nelson to Dr. Buggs for steroid injections.  *See* (R. 923, 930).  In short, Dr. Shaffer's own treatment notes do not support the findings he made in the questionnaire.  Accordingly, the ALJ committed no error when he decided to not give the questionnaire controlling weight.

The rest of the medical evidence also supports the ALJ's decision.  For example, as it relates to Nelson's cardiac ailments, the record does not support her contention of a disability.  In fact, during an admission for chest pain in April 2007, the tests showed normal results, except for a "small anterior apical area of mild stress-induced ischemia," and there was "no evidence of myocardial infarction."  (R. 523, 527, 536). The physicians "felt the patient did not need any procedures and the coronary artery disease would be medically treated," and released Nelson "in stable condition" with "normal left ventricular systolic function."  (R. 523, 536).

The only additional treatment notes related to Nelson's pain or impairments during the relevant period are by Dr. Buggs, whom Nelson visited in January of

2005 for knee and right hip pain that had persisted over several months with increasing intensity.  (R. 930).  Dr. Buggs determined that Nelson's "range of motion of both knees decreased secondary to discomfort" and her "hip exam reveals range of motion decreased secondary to discomfort" which Dr. Buggs attributed to degenerative joint disease in Nelson's knees, right hip, and hands.  *Id*. Thereafter, Nelson visited Dr. Buggs for her hip and knee pain several times in 2006 and 2009, and Dr. Buggs again attributed the pain to degenerative joint disease and injected Nelson's knee with a steroid, Depo-Medrol, and pain medicine, Xylocaine.  *See* (R. 923-930).  Finally, Dr. Bugg offered no opinion on Nelson's ability to sit, stand, or walk, except to note only that Nelson had "negative instability of the knee."  (R. 923, 927).  In sum, while Dr. Bugg's treatment notes show that Nelson experienced some pain, they do not support a finding that Nelson has disabling pain and, thus, do not support Dr. Shaffer's opinions.

Lastly, in rejecting Dr. Shaffer's questionnaire, the ALJ relied heavily on the non-examining, reviewing opinion of Dr. Samuel Chastain, who completed a Physical RFC on Nelson on September 24, 2007, in which he found that Nelson had "[n]ormal physical exams and ROS negative other than obesity," and opined that Nelson could "occasionally lift 50 pounds and frequently lift 25 pounds," and

"stand or walk with normal breaks for a total of 6 hours in an 8 hour workday, sit with normal breaks for a total of about 6 hours in an eight hour workday, and push and pull without limits."  (R. 37, 563-570).  Generally, when considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion."  20 C.F.R. § 404.1527(c)(3).  Additionally, "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."  *Id*. at § 404.1527(c)(4).  Unlike Dr. Shaffer, Dr. Chastain supported his opinion with medical findings in the record that showed that Nelson had normal physical exams and that, except for her obesity, a review of her systems was negative.  (R. 564).  Thus, the ALJ determined that Dr. Chastain's opinion was consistent with the entire record as a whole and gave it considerable weight.

Moreover, the ALJ also relied on Dr. Chastain's assessment of Dr. Shaffer's findings.  Specifically, Dr. Chastain stated that "Dr. Shaffer's MSO is not supported by his own records nor [the] rest of MER[.]"[2]  (R. 569).  Dr. Chastain supported this opinion by showing that despite Dr. Shaffer's letter on July 12,

---

[2]MSO refers to medical source opinion, and MER refers to medical evidence of record.

2007 stating that Nelson was "unable to return to work until she is able to file for her disability," (R. 548), the evidence showed that on April 7, 2007, Nelson "[j]ust had [a] negative cardiac cath. She feels verbally abused and picked upon at work. ROS - no visual or ENT sxs. Musculoskelatal: no bone, joint, or muscle pain," and in February 2007, Nelson had "[n]ormal physical exam and negative ROS." (R. 569-70). The ALJ found Dr. Chastain's assessment of Dr. Shaffer's opinions, along with the entire medical evidence, instructive.

Having reviewed the entire record, this court agrees with the ALJ that Dr. Shaffer's conclusions regarding the severity of Nelson's physical impairments are both internally inconsistent and unsupported by the record as a whole. *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (per curiam) ("[T]he ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion."). *See also Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004) (upholding ALJ's decision to discount chiropractor Reckford's opinion, in part, because "Reckford's findings of disability are inconsistent with his own treatment notes and unsupported by the medical evidence"). Ultimately, Nelson has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Nelson failed to meet this burden by failing to show how the medical record supports Dr. Shaffer's opinions. In fact, while Nelson has

many medical problems and some apparent pain, the record before this court failed

to establish that Nelson's medical conditions or pain rose to the severity of a

disability.  Therefore, the substantial evidence supports the ALJ's determination to

give little weight to Dr. Shaffer's opinion.

### ii. Consultative examination opinion by Dr. Adam Nortick

Nelson also contends that the ALJ erred by failing to give greater weight to

the consultative examining opinion of Adam Nortick, M.D.,which was purportedly

consistent with Dr. Shaffer's.  *See* doc. 7 at 6, 11; (R. 935-953).  Generally, the

ALJ is to "give more weight to the opinion of a source who has examined [a

claimant] than to the opinion of a source who has not examined [the claimant]."

20 C.F.R. § 404.1527(c)(1).  However, the ALJ considers many factors including

(1) supportability - whether the examining source presents supporting evidence for

his opinion, particularly medical signs and laboratory findings, 20 C.F.R. §

404.1527(c)(3); (2) consistency - whether the examining source's opinion is

consistent with the record as a whole, 20 C.F.R. § 404.1527(c)(4); (3)

specialization - whether the examining source is a specialist and is giving an

opinion related to her speciality; and (4) other factors - evidence that tends to

support or contradict the opinion, 20 C.F.R. § 404.1527(c)(6).  These factors

militate against a finding that the ALJ should have given more weight to Dr.

Nortick's opinions.

Dr. Nortick examined Nelson on June 15, 2009, during which Nelson complained primarily of knee pain and a backache lasting for the last five years, which Nelson attributed to her weight.  (R. 935).  Dr. Nortick noted that Nelson used a cane and that it stabilized Nelson's slow and broad based gait.  (R. 940). Dr. Nortick's examination revealed that Nelson was "positive for easily winded," was "short of breath, wheezing," "can not stand unsupported on right/left leg for 5 seconds,"  "can twist torso with difficulty," "can laterally bend trunk with difficulty," "can get into and out of chair with difficulty, needs to use cane to support," and "can go from supine to sitting on exam table with difficulty, needed assist to pull up."  (R. 939-40).  Based on his own examination and a review of the medical evidence provided by the DDS, Dr. Nortick opined that Nelson could sit, stand, and walk "on an occasional basis."  (R. 946).  Additionally, Dr. Nortick completed a questionnaire in which, based on Nelson's obesity and edema, he stated that Nelson could not walk more than 50 feet without the use of her cane, could occasionally lift and carry up to 10 pounds, can never lift anything over 11 pounds, could sit at most for 30 minutes and stand and walk for at most 10 minutes, and could sit for two hours in a total 8 hour work day and stand and walk for only 30 minutes each in a total 8 hour workday.  (R. 948-50).

The ALJ gave little weight to Dr. Nortick's findings because he found that Dr. Nortick relied primarily on Nelson's subjective complaints: "when [Nelson] met with Dr. Nortick, the severity of symptoms alleged was much greater than elsewhere in the medical record of evidence.  Dr. Nortick's opinion appears to largely be based upon [Nelson's] subjective complaints rather than the medical evidence, and is inconsistent with the great weight of the medical evidence.  I afford his opinion little weight."  (R. 45).  The ALJ added also that Dr. Nortick's findings are inconsistent with the entries he made from his examination of Nelson: "Dr. Nortick's physical examination found [Nelson's] cervical range of motion was within normal limits, her thoracic range of motion was within normal limits, and her lumbar range was as follows: flexion 16, extension 18, left lateral flexion 20, left straight leg 62, right lateral flexion 22, and right straight leg 56 [also] [h]er shoulder, elbow, forearm, wrist, hip, knee, ankle, and hand ranges of motion were within normal limits."  (R. 41, 941-45).

Based on the court's review of the medical record, the ALJ's findings are supported by substantial evidence.  Specifically, Dr. Nortick failed to provide substantial support for his opinions, never pointing to any particular part of the medical record to justify them, and, critically, as the ALJ noted, he seemed to base the majority of his opinions on Nelson's statements to him.  For example, Nelson

told Dr. Nortick that she could only "sit in a comfy chair for 30 minutes, recline

for 30 minutes, watch television for 30 minutes, ride in a car for 30 minutes, drive

a car for 30 minutes. . . sit at dinner table for 30 minutes, listen to a speech for 30

minutes, ride in a car for 2 hours, ride in an airplane for 2 hours. . . sit on a park

bench for 30 minutes. . . sit on a bar stool for 30 minutes, go up one flight of stairs

and go down one flight of stairs."  (R. 938).  This report seems to be the source for

Dr. Norton's statements in the questionnaire that Nelson could sit for at most 30

minutes in an 8 hour workday.  *See* (R. 948-50).  Without specific medical

findings by Dr. Nortick, Nelson's subjective statements are not enough to support

Dr. Nortick's opinions.  In sum, the substantial evidence supports the ALJ's

determination to give little weight to Dr. Nortick's opinions.

> B.  <u>Alleged failure to give the vocational expert a hypothetical that
> included all of Nelson's impairments</u>

Nelson also contends that the ALJ failed to "consider all established

vocational limitations," and that "when the ALJ questioned the vocational expert

about past relevant work, he, of necessity, must also post hypothetical questions to

the vocational expert incorporating other established functional vocationally

relevant limitations including those outlined by Dr. Shaffer, the treating physician,

and by Dr. Nortick, the consulting physician."  Doc. 7 at 13.  Generally, "[i]n order

for a vocational expert's testimony to constitute substantial evidence, the ALJ

must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the ALJ only has to include credible limitations in his hypothetical to the vocational expert. *See Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true. . . The hypothetical question must capture the concrete consequences of the claimant's deficiencies. . . However, the ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated."). In other words, in light of the ALJ's finding that Drs. Shaffer and Nortick's opinions were not wholly credible, the ALJ committed no error if he, in fact, failed to include their findings in his hypothetical. Moreover, contrary to Nelson's contention, the ALJ, in fact, presented a hypothetical that comprised all of Nelson's impairments. Specifically, the ALJ established a hypothetical for a "52 year old individual who has a masters degree" using the RFC the ALJ outlined, "no operation of foot or leg controls...no climbing. No unrestricted heights and no driving," "occasional bending, stooping" and "occasional overhead reaching" with a "sit and/or stand" limitation. (R. 92, 94, 95, 96). Based on these limitations, the vocational expert testified that such a person could perform Nelson's past relevant work of a

Scheduler and an English teacher.  (R. 96, 101).  Put simply, the ALJ's

hypothetical and the vocational expert's testimony reveal that the vocational

expert considered Nelson's relevant physical limitations.  Thus, pursuant to

*Wilson*, 284 F.3d at 1227, the substantial evidence supports the vocational expert's

testimony and the ALJ's finding that Nelson is not disabled.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Nelson is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination.  Therefore, the

Commissioner's final decision is **AFFIRMED**.  A separate order in accordance

with the memorandum of decision will be entered.

**Done** the19th day of October, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE